

Representing Management Exclusively in Workplace Law and Related Litigation

Jackson Lewis P.C.
666 Third Avenue
New York, New York 10017
Tel 212 545-4000
Fax 212 972-3213
www.jacksonlewis.com

| | | | |
|---|---|---|---|
| ALBANY, NY | GRAND RAPIDS, MI | NAPA, CA | RALEIGH-DURHAM, NC |
| ALBUQUERQUE, NM | GREENVILLE, SC | NEW ORLEANS, LA | RAPID CITY, SD |
| ATLANTA, GA | HARTFORD, CT | NEW YORK, NY | RICHMOND, VA |
| AUSTIN, TX | HOUSTON, TX | NORFOLK, VA | SACRAMENTO, CA |
| BALTIMORE, MD | INDIANAPOLIS, IN | OMAHA, NE | SAINT LOUIS, MO |
| BIRMINGHAM, AL | JACKSONVILLE, FL | ORANGE COUNTY, CA | SAN DIEGO, CA |
| BOSTON, MA | LAS VEGAS, NV | ORLANDO, FL | SAN FRANCISCO, CA |
| CHICAGO, IL | LONG ISLAND, NY | PHILADELPHIA, PA | SAN JUAN, PR |
| CINCINNATI, OH | LOS ANGELES, CA | PHOENIX, AZ | SEATTLE, WA |
| CLEVELAND, OH | MEMPHIS, TN | PITTSBURGH, PA | STAMFORD, CT |
| DALLAS, TX | MIAMI, FL | PORTLAND, OR | TAMPA, FL |
| DAYTON, OH | MILWAUKEE, WI | PORTSMOUTH, NH | WASHINGTON, DC REGION |
| DENVER, CO | MINNEAPOLIS, MN | PROVIDENCE, RI | WHITE PLAINS, NY |
| DETROIT, MI | MORRISTOWN, NJ | | |

WRITER'S DIRECT DIAL (212) 545-4088
perryr@jacksonlewis.com

July 2, 2014

**VIA FEDERAL EXPRESS**

Trustees of the PACE Industry Union-Management
Pension Fund
3320 Perimeter Hill Drive
Nashville, Tennessee 37211-4123
ATTN: Tonisha M. Franklin

      Re:    Domtar Inc. - Request for Review of
               Assessment of Withdrawal Liability

Dear Ms. Franklin:

      Pursuant to Section 4219(b)(2)(A) of the Employee Retirement Income Security Act ("ERISA"), Domtar Inc. (the "Company") respectfully requests review by the Trustees of the PACE Industry Union-Management Pension Fund (the "Trustees" and the "Fund", respectively) of the demand for withdrawal liability, as set forth in your letter dated April 11, 2014 (the "Demand").

      This request for review is submitted to the Trustees for the sole purpose of considering the Company's arguments regarding the Fund's determination that the Company has withdrawn from the Fund in a complete withdrawal and the calculation of withdrawal liability allegedly owed by the Company, and cannot be disclosed to any other person or used for any other purpose without the express consent of the Company.

      The submission of this request for review does not constitute an acknowledgement by the Company that is has withdrawn from the Fund within the meaning of Section 4203(a) of ERISA or that it is obligated to make any payment of withdrawal liability to the Fund. The Company specifically reserves the right to supplement this request for review and to request additional information from the Fund.

      In conducting a review of this matter, the Company specifically requests that the Trustees consider all factors relevant to their position, including, but not limited to, the following:



A.  **Determination of Withdrawal Liability**

   1.  *Allocation of Unfunded Vested Benefit-The Direct Attribution Method*

The Fund allocates unfunded vested benefits to a withdrawing employer using the Direct Attribution Method described in *29 U.S.C. § 1391(c)(4)*. Under the Direct Attribution Method, the amount of unfunded vested benefits allocated to a withdrawing employer is equal to the sum of: (a) the unfunded liability attributable to service with the withdrawing employer and (b) a portion of the unfunded liability attributable to service with employers who have previously withdrawn from the plan. In addition, a withdrawing employer is allocated a share of "adjustable benefits" – benefits that were reduced as part of the rehabilitation plan adopted as a result of the plan being in critical status.

Based on our review of the Demand, it appears that the Fund allocates each participant's entire benefit to the last employer who employed the participant prior to the employee's date of withdrawal. It is our understanding that this modification of the Direct Attribution Method would require the approval of the Pension Benefit Guaranty Corporation (PBGC"). In this regard, the Company notes that the relevant PBGC regulation (codified at *29 CFR §4211.21*) provides that "[u]ntil the PBGC approves the allocation method or modification, a plan may not demand withdrawal liability under section 4219 of ERISA in an amount that exceeds the lesser of the amount calculated under the amendment or the amount calculated under the allocation method that the plan would be required to use if the PBGC did not approve the amendment."

Based on the foregoing, the Company requests that the Fund: (a) provide proof that the use of the aforementioned modification to the Direct Attribution Method has been properly approved by the Pension Benefit Guaranty Corporation; and (b) to the extent that the requisite approvals have not been received, to recalculate the amount of unfunded vested benefits properly allocable to the Company.

   2.  *Calculation of Unfunded Vested Benefits.*

The Demand asserts that the Fund had an unamortized balance of unfunded vested benefits, or "UVB", of $1,383,676,224 as December 31, 2011. Of this amount, the Demand further asserts that $46,550,825 of UVB was allocable to the Company. UVB is defined as the excess of "the value of the nonforfeitable benefits under the plan" over the value of the assets of the plan. *ERISA Section 4213(c).* The calculation of UVB is therefore based, in relevant part, upon the value of the Fund's "nonforfeitable benefits." Nonforfeitable benefits, in turn, are defined as "a benefit for which a participant has satisfied the conditions for entitlement under the plan." *ERISA Section 4001(a)(8).*

Nonforfeitable benefits are not the same as vested benefits. *PBGC Opinion Letter 91-2* (explaining that "benefits become vested when a participant has completed the requisite number



of years of service under the plan" and that "a benefit, even though vested, does not become nonforfeitable until the participant has met all of the plan's requirements for that particular benefit"); *Roofers Local No. 30 Combined Pension Fund v. D.A. Nolt*, 719 F. Supp.2d 530 (E.D. Pa. 2010), *aff'd*, 444 Fed. Appx. 571 (3rd Cir. 2011)(upholding arbitrators determination excluding from UVB the value of early retirement benefits for participants who had not met all of the conditions for entitlement as of the last day of the plan year preceding the date of withdrawal.)

Based on the information provided, the Company's actuary is unable to ascertain whether and to what extent the calculation of UVB upon which the Demand is based includes forfeitable benefits, including without limitation early retirement benefits. To allow the Company's actuary to properly review the Fund's calculation of UVB and to determine what benefits were included therein, the Company requests any and all data and documentation used by the Fund's actuary to calculate UVB, including without limitation the following information:

(i) Plan participant census;
(ii) Actuarial workpapers reflecting the calculation of UVB;
(iii) Computer program used to calculate UVB; and
(iv) Detailed disclosure of each method, assumption, and estimate used by the Fund actuary to calculate UVB.

To the extent that the calculation of UVB includes benefits that are not "nonforfeitable benefits" within the meaning of Section 4213(c) of ERISA, the Company respectfully requests that the Fund adjust the amount of the UVB, and the allocation thereof to the Company, and issue a revised demand for withdrawal liability.

3. *Amount of Withdrawal Liability-Impact of ERISA Section 4219(c)(1)(B)*

The Demand states that the amount of the Company's withdrawal liability is $46,550,825. The Demand appears to base the amount of withdrawal liability solely on the amount of UVB alleged to be allocated to the Company. However, in this regard the Demand disregards the plain language of the statute. Specifically, Section 4201(b)(1)(C) of ERISA defines an employer's withdrawal liability as "the allocable amount of unfunded vested benefits" adjusted "to reflect the limitation on annual payments under section 4219(c)(1)(B)." Section 4219(c)(1)(B), in turn, limits a withdrawing employer (absent circumstances not present here) to 20 annual payments of withdrawal liability.

Based on the foregoing clear and unambiguous statutory language, it is the Company's position that their "withdrawal liability" is the present value of the 20-year stream of payments. The Company therefore respectfully requests that the Fund recalculate the Company's withdrawal liability to properly reflect the limitations of section 4219(c)(1)(B) of ERISA.



    4.    *Amount of Contributions*

The Demand sets forth a contribution history which improperly employs estimates and includes erroneous calculations. The Company respectfully requests that the Fund review its determination regarding the amount of contributions used in calculating the Company's allocable share of UVB. The Company reserves the right to identify any inaccuracies and to furnish additional information on this issue.

    5.    *Allocable Share of Unfunded Vested Benefits*

The Demand asserts that the Company's allocable share of the Fund's UVB was $46,550,825. The Company respectfully requests that the Fund review its determination regarding the above. The Company reserves the right to identify any inaccuracies and to furnish additional information on this issue.

**B.    Payment of Withdrawal Liability**

    *1.  Payment Schedule*

The amount of each annual payment of withdrawal liability is determined in accordance with Section 4219(c)(1)(C) of ERISA. The Demand asserts that (i) the Company's highest 3 year average base units (in this case, hours worked) was 2,223,170.61; (ii) the Company's highest contribution rate was $1.9093 per hour; (iii) the annual payment is $4,244,699.65; (iv) the monthly payment is $355,860.13; and (v) the Company's withdrawal liability is payable in 240 monthly payments of $355,860.13.

Thus, the Company respectfully requests that the Fund review its determinations regarding (i)-(v) above. The Company reserves the right to identify any inaccuracies and to furnish additional information on this issue.

    *2.  Highest Contribution Rate*

As noted above, the Demand provides that the "Highest contribution rate at which Company was obligated to contribute through withdrawal date" was $1.9093 per hour. The Demand further provides that "the calculation of the payment schedule reflects the 10% surcharge that was effective January 1, 2011. For the reasons set forth herein, the inclusion of such amounts is incorrect.

In *Board of Trustees of the Local 863 IBT Pension Trust Fund v. C & S Wholesale Grocers, Inc.*, Civil Action No. 12-7821 (JLL)(JAD)(Dist. NJ March 19, 2014), the issue before the Court was the precise issue present here: "whether ERISA section 4219(c)(1)(C)(i)'s formula for calculating a withdrawing employer's annual withdrawal liability payment somehow accounts



for an automatic employer surcharge paid under ERISA section 305(e)(7)(A)." The Court held that they did not. It is the Company's position that the same result is mandated here.

The Court's analysis began by noting that "one of the variables in ERISA section 4219(c)(1)(C)(i)'s formula for calculating an employer's annual withdrawal liability payment is the employer's "highest contribution rate." *29 U.S.C. § 1399(c)(1)(C)(i)(II)*. The Court further noted that an employer's "highest contribution rate" is defined as that rate at which the employer had an obligation to contribute arising "under one or more [CBAs]" under the plan.' *See 29 U.S.C. §§ 1392(a), 1399(c)(1)(C)(i)(II)*. Therefore, in order for an employer's "highest contribution rate" to include an automatic employer surcharge imposed by ERISA section 305(e)(7), the Court found that the surcharge must likewise arise under the CBAs.

As the Court held, an automatic employer surcharge arises not under a CBA, but under ERISA section 305(e)(7) when the necessary conditions are met. Again, that section simply states that the value of an automatic employer surcharge, when applicable, is informed by the employer's CBAs; it does not magically amend the terms of those CBAs. *See 29 U.S.C. § 1085(e)(7)*. The plain language of ERISA section 305(e)(7)(A) clarifies this point:

> Each employer *otherwise obligated to make contributions* for the initial critical year shall be obligated to pay to the plan for such year a surcharge equal to 5 percent of the contributions *otherwise required under the applicable [CBA]* (or other agreement pursuant to which the employer contributes). For each succeeding plan year in which the plan is in critical status for a consecutive period of years beginning with the initial critical year, the surcharge shall be 10 percent of the *contributions otherwise so required.* (emphasis in original).

Based on the foregoing statutory language, the Court held that it was improper for the Fund to account for the imposition of the surcharge when it determined the withdrawing employer's "highest contribution rate" under ERISA section 4219(c)(1)(C)(i)(II). The same result is mandated here. The Company therefore requests that the Fund properly calculate the payment schedule, without the inclusion of the automatic surcharges, and issue a revised Demand accordingly.

    **C.**    **The Fund's Actuarial Factors Are Unreasonable**

The Company further asserts the following:

    1.    The withdrawal liability computations have not been prepared in conformity with generally accepted actuarial methods and assumptions, and are biased towards overstatement of



the alleged withdrawal liability. Assumptions were made as to the factual data where actual data should properly have been used, and certain inaccurate data appears to have been applied.

2. Other actuarial factors artificially and unreasonably create withdrawal liability in this matter including, but not limited to, the Fund's assumptions relative to projected retirement dates, (which are unreasonably early), as well as the selection or failure to select, the mortality table, disability mortality table, employee termination rates and disability rates. Further, the Trustees should examine the methods selected for allocating UVB attributable to uncollected sums due to, among other things, employer insolvencies, or ERISA's *de minimis* rules.

E. **Administrative Actions by the Trustees Unreasonably Increased or Created Withdrawal Liability.**

The Company further asserts the following:

1. Benefit increases in prior plan years were excessive, in that such increases unreasonably increased unfunded vested benefits.

2. The Fund's investment policies, or contribution policies unreasonably increased unfunded vested benefits.

3. Please confirm that interest on the withdrawal liability assessed has been calculated in accordance with the Supreme Court's decision in *Milwaukee Brewery Workers Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414 (1995).

F. **Validation of Data**

The Company requests that the Fund specifically review the techniques that have been used to validate the data underlying the calculation of withdrawal liability set forth in the Demand. The Company specifically requests that the Fund (i) set forth the techniques used to ensure accuracy and completeness; (ii) review and determine whether the data has been appropriately and sufficiently audited for inaccuracies and errors of omission. The Company reserves the right to identify and further contest any areas in which these validation techniques may have affected their accuracy. The Company further requests that the Fund explain the use of estimated wage data in the calculation of the annual payment amount.

*   *   *

Please advise (i) whether the Trustees have adopted dispute resolution rules which differ from those set forth in Section 4219 and 4221, and (ii) the identity of the arbitral forum used by the Fund under Section 4221 of ERISA.

*   *   *



The Company reserves the right to (1) challenge at any time the assessment of withdrawal liability based upon any relevant statutory, regulatory, or other legal ground before any appropriate forum, (2) request any additional information or materials which it may require in the course of this proceeding, (3) submit additional documentation to substantiate the arguments herein and to raise further arguments, not raised herein, based upon after-acquired information. The Fund may not construe any payment of an installment of demanded withdrawal liability as an admission of the occurrence of a withdrawal or of any liability with respect to any alleged withdrawal.

Kindly direct all future correspondence regarding this matter to the undersigned.

Very truly yours,

JACKSON LEWIS P.C.

ROBERT R. PERRY

cc: Sebastian Routier
 Etienne Tougas
 Mitchell Hofing
 James B. Dexter, FSA

4829-1755-3692, v. 1