

**UNITED STEELWORKERS**

PIUMPF

PIUMPF

Maria F. Wieck, CPA, CEBS
Administrative Officer

Trevor K. England, JD, CPA
Financial Officer

October 9, 2014

Robert F. Perry
Jackson Lewis PC
666 Third Avenue
New York, NY 10017

**VIA REGULAR & ELECTRONIC MAIL**

**CERTIFIED MAIL: 9171 9690 0935 0069 5592 70**
**RETURN RECEIPT REQUESTED**

Re: Domtar, Inc. Er # 0745, 752

Dear Mr. Perry:

This letter responds to the July 2, 2014, Request for Review by your client, Domtar Inc. Your request raises five issues with respect to the withdrawal liability calculation, two issues respecting the calculation of the installment payment schedule, and half-dozen other non-specific questions or challenges. Each is addressed in turn below.

1.  The first issue you raise with respect to the withdrawal liability assessed to Domtar concerns the Fund's practice of allocating each participant's entire benefit to the last employer who employed the participant. Your position is that this rule is a modification of the direct attribution method that requires authorization from the PBGC. The Fund disagrees with that position.

Section 6(h)(1) of the Fund's Amended and Restated Declaration and Agreement of Trust states that, for purposes of calculating withdrawal liability, "Service with an Employer shall include all service (including Past Service Credit) credited to the Employees (including retirees and former Employees) for whom it was the last contributing Employer prior to the relevant date." In Section III of the Standard Form Agreements signed by Domtar (most recently on January 6 and 7, 2009), Domtar agreed "to become a party to the Agreement and Declaration of Trust establishing the said Fund, which is incorporated into this Agreement and made a part hereof, and agrees to be bound by all the terms and provisions of said Agreement. . . ." The Court of Appeals for the Seventh Circuit has held that these terms constitute a binding contractual agreement by the employer to be subject to the last employer rule contained in Section 6(h) of the Trust Agreement. *See Artistic Carton Co. v. Paper Industry Union-Management Pension Fund*, 971 F.2d 1346 (7th Cir. 1992). At least one other federal court has upheld a similar rule applied by a different multi-employer pension plan, holding that the "'last employer' assumption may be employed by a fund allocating withdrawal liability using the direct attribution method, either as a simplifying actuarial assumption that is reasonable under the particular circumstances and therefore permitted under 29 U.S.C. § 1393(a) or as a permissible plan rule under 29 U.S.C. § 1391(c)(4)(B) which an employer may agree to be bound by under general contracting principles." *ISB Liquidating Co. v. Dist. No. 15 Machinists' Pension Fund ex rel. Bd. of Trustees*, 127 F. Supp. 2d 192, 206 (E.D.N.Y. 2001). Accordingly, your request that the Fund recalculate Domtar's withdrawal liability without application of the "last employer" rule is denied.

PACE Industry Union–Management Pension Fund

3320 Perimeter Hill Drive • Nashville, Tennessee 37211-4123 • 1-800-474-8673 • 615-333-6343 • 615-333-5760 (fax)
website: www.usbenefitfunds.com

Case 3:16-cv-01469   Document 1-4   Filed 08/20/16   Page 1 of 3 PageID #: 80

2. Next, you question whether the Fund has impermissibly included forfeitable vested benefits, such as early retirement benefits, in the withdrawal liability calculations. The Fund has not done so; the Fund's withdrawal liability calculations only include nonforfeitable benefits. As stated in the Fund's annual actuarial valuation report, "[f]or purposes of determining the present value of vested benefits [for withdrawal liability], we exclude all benefits that are not protected by IRC Section 411(d)(6), including pre-retirement death benefits." *See* 2012 Actuarial Valuation Report, p. 2-25

In connection with this issue, you request a broad swath of information from the plan, specifically: plan participant census; actuarial workpapers reflecting the calculation of UVB; computer program used to calculate UVB; and detailed disclosure of each method, assumption and estimate used by the Fund actuary to calculate UVB. The Fund previously provided to Domtar the methods, assumptions and estimates used by the Fund actuary to calculate the withdrawal liability, including the UVB, as attachments to the April 11, 2014 Demand letter. The Fund, and its actuaries, are under no obligation to turn over to participating employers the actuary's work papers or "computer programs," but will email you the 2012 Actuarial Valuation Report. You have already received documents explaining the methods and assumptions used by the Fund to calculate the UVB. The Fund will produce to you the plan participant census for Employees whose vested benefits were attributable to Domtar.

3. The third issue you raise is "the Company's position that their 'withdrawal liability is the present value of the 20-year stream of payments" under ERISA Section 4219(c)(1)(B). If Domtar would like to pay their withdrawal liability in a lump sum, the present value of the 20-year stream of payments, as of October 1, 2014, is $44,942,584.62.

4. The fourth issue you raise for review is a claim that the Fund "improperly employs estimates and includes erroneous calculations" in determining the UVB. The Fund did not use estimates in calculating Domtar's liability, and none of its calculations were in error.

5. The fifth issue you raise is a request that the Fund review its determination of the Company's allocable share of the Fund's UVB, without identifying any particular issue for review. This portion of the Request fails to raise specific matters for review as required by ERISA Section 4219(b). The Fund will not review its calculation where no issue is raised for review.

6. Next, your Request raises two issues relating to the calculation of the installment payments schedule. First, you make a general request that the Fund "review its determinations" with respect to the calculation of the installment payment, without identifying any errors in those calculations or the figures used in those calculations. The Fund has found no error in its calculations or in the figures used therein. Second, you challenge the inclusion of the 10% surcharge imposed pursuant to the Pension Protection Act in the calculation of the installment payment amount, citing to a district court opinion, *Bd. of Trustees of the IBT Local 863 Pension Fund v. C & S Wholesale Grocers Inc.*, Op. at 27 (D.N.J. Mar. 19, 2014). As you may know, that decision is currently on appeal before the Third Circuit Court of Appeals. In addition, at least one arbitrator (in addition to the arbitrator whose ruling is at issue in the *C & S Wholesale Grocers* case) has ruled that the surcharge is properly included. Moreover, Domtar's situation is distinguishable from that of the employer in the *C & S Wholesale Grocers* case, because Domtar signed a Standard Form Agreement agreeing to be bound by the Fund's Trust Agreement and the actions of its Trustees, and because the contribution rate increases here were imposed not merely due to the Pension Protection Act, but also in implementation of the Rehabilitation Act adopted by the Trustees.

Your Request then goes on to raise a grab-bag of issues, including an assertion that the liability computations were not prepared in conformity with generally accepted actuarial methods and assumptions; that the Fund should review its methods for allocating UVB attributable to

uncollectible sums; that unidentified benefit increases in unidentified prior years were excessive; and that unidentified investment or contribution policies unreasonably increased vested benefits. None of the subparagraphs in this part of the Request raise specific matters for review as required by ERISA Section 4219(b). The Plan has provided a broad range of information and materials in response to the Employer's Information Request, which enabled the Employer to identify specific matters for review, and the Employer has had ample opportunity to request additional information.

Your Request seeks confirmation that the interest on the withdrawal liability has been calculated in accordance with the Supreme Court's decision in *Milwaukee Brewery Workers*, which it has been.

You also request that the Fund set forth the techniques used to ensure accuracy and completeness of data, and review and determine whether the data has been sufficiently audited. The Fund has sufficiently audited the data for accuracy and completeness. Following is a general description of some of the steps taken by the Fund to ensure accuracy and completeness of the data used for withdrawal liability calculations. Prior to submitting data to the Fund's actuaries for calculations, the Fund runs a report of contributions and pensions paid for the company (individually and for each program or location in a control group) the Fund Office database. The Fund then runs a year-to-date history report from the database of the hours posted by month, by participant, by program. The total contributions are recalculated by taking hours for the company multiplied by the contribution rate to determine the amount that the employer should have contributed for the year to verify the contributions listed on the contributions and pension report are correct. The hours, contributions, payroll audits, interest received and surcharges are then verified on the contributions and pensions paid report by vouching such items to the remittance reports, interest billings and payroll audit reports. For any variances discovered, the Fund reviews the scanned images of the original remittance reports received from the employer each month to determine where the difference is. If there is a difference or error, the Fund makes any necessary corrections before submitting the data to the actuary for the withdrawal liability calculation. Further, as set forth in the Actuarial Valuation Report, the Fund's actuaries "review the data for reasonableness and consistency" and have found "no reason to doubt the substantial accuracy of the information on which" they base their calculations.

As a final note, the Request asserts that the Employer reserves the right to make further arguments not raised in the Request. The Plan reserves the right to object to any arguments that are raised after lapse of the time specified in ERISA Section 4219(b)(2).

Sincerely,

Trevor K. England, JD, CPA
Financial Officer


Cc: Maria F. Wieck
Lisa Ellis
Tonisha M. Franklin