

Attorneys at Law

Jackson Lewis P.C.
666 Third Avenue
New York, New York 10017
Tel 212 545-4000
Fax 212 972-3213
www.jacksonlewis.com

ALBANY, NY
ALBUQUERQUE, NM
ATLANTA, GA
AUSTIN, TX
BALTIMORE, MD
BIRMINGHAM, AL
BOSTON, MA
CHICAGO, IL
CINCINNATI, OH
CLEVELAND, OH
DALLAS, TX
DAYTON, OH
DENVER, CO
DETROIT, MI

GRAND RAPIDS, MI
GREENVILLE, SC
HARTFORD, CT
HOUSTON, TX
INDIANAPOLIS, IN
JACKSONVILLE, FL
LAS VEGAS, NV
LONG ISLAND, NY
LOS ANGELES, CA
MEMPHIS, TN
MIAMI, FL
MILWAUKEE, WI
MINNEAPOLIS, MN
MORRISTOWN, NJ

NAPA, CA
NEW ORLEANS, LA
NEW YORK, NY
NORFOLK, VA
OMAHA, NE
ORANGE COUNTY, CA
ORLANDO, FL
OVERLAND PARK, KS
PHILADELPHIA, PA
PHOENIX, AZ
PITTSBURGH, PA
PORTLAND, OR
PORTSMOUTH, NH
PROVIDENCE, RI

RALEIGH-DURHAM, NC
RAPID CITY, SD
RICHMOND, VA
SACRAMENTO, CA
SAINT LOUIS, MO
SAN DIEGO, CA
SAN FRANCISCO, CA
SAN JUAN, PR
SEATTLE, WA
STAMFORD, CT
TAMPA, FL
WASHINGTON, DC REGION
WHITE PLAINS, NY

MY DIRECT DIAL IS: (212) 545-4088
MY EMAIL ADDRESS IS: PERRYR@JACKSONLEWIS.COM

January 29, 2015

**VIA E-MAIL**
**(TENGLAND@USWBENEFITFUNDS.COM) &**
**FEDERAL EXPRESS**

Trevor England, J.D., LL.M., C.P.A.
Financial Officer
USW Benefit Funds
3320 Perimeter Hill Drive
Nashville, TN 37211

Re:     Domtar Corporation-Demand for Arbitration

Dear Mr. England:

Pursuant to Section 4221 of the Employee Retirement Income Security Act ("ERISA") and the regulations promulgated by the Pension Benefit Guaranty Corporation (29 CFR Part 4221), the employer, Domtar Corporation, disputes the determination of its withdrawal liability by the trustees of the PACE Industry Union-Management Pension Fund and hereby initiates arbitration with respect to the same in accordance with the requirements of 29 CFR § 4221.3.

In accordance with the notice requirements 29 CFR § 4221.3(d), attached to this Demand for Arbitration are copies of the following:

1.     Demand for Withdrawal Liability dated April 11, 2014;

2.     Request for Review dated July 2, 2014;

3.     Response to Request for Review dated October 9, 2014;

4.     Email dated December 3, 2014, evidencing the Fund's agreement to extend the deadline for Domtar Corporation to commence arbitration until January 31, 2015.

5.     Email dated December 12, 2014, indicating that "the Fund has adopted the PBGC rules and procedures governing dispute resolution" and that the "Fund has not adopted any rule requiring the use of a specific arbitral forum."



Please direct all correspondence in this matter to the undersigned.

Sincerely,

JACKSON LEWIS P.C.

Robert R. Perry

cc: Sebastien Routier
Etienne Tougas



**UNITED STEELWORKERS**

**USW**

UNITY AND STRENGTH FOR WORKERS
**PIUMPF**

PIUMPF

**Maria F. Wieck, CPA, CEBS**
Administrative Officer
**Trevor K. England, JD, CPA**
Financial Officer

April 11, 2014

Domtar, Inc.
c/o Tracie Y. Cooper
285 Highway 71 South
Ashdown, AR 71822-8356

**CERTIFIED MAIL: 7011 2970 0002 7232 4445**
**RETURN RECEIPT REQUESTED**

RE:     Domtar, Inc. – cono 0745 and 0752 Withdrawal Liability

Dear Ms. Cooper:

Due to the cessation of participation of Domtar, Inc. on December 30, 2012, Domtar, Inc. has incurred a complete withdrawal from the Fund as described in Title IV of the Employee Retirement Income Security Act of 1974 ERISA. This letter is to demand payment of the withdrawal liability. The Trustees of this Fund have adopted the attributable method for determining withdrawal liability. The calculated withdrawal liability is $46,550,825.

This figure considers employee and pensioner data used in the valuation of the Fund as of January 1, 2012 and the benefit levels in effect as of December 31, 2011. Additional, the calculations reflect data on terminated employer through 2011. The annual payment of $4,244,699.65 reflects the average annual hours in the highest three consecutive years during the ten years preceding the withdrawal and the highest contribution rate which was in effect. These numbers are 2,223,170.61 and $1.9093 respectively. The annual payment is to be remitted monthly at the rate of $355,860.13 for 240 months. Payments should commence June 1, 2014. Please note, the payment schedule is subject to and reflects the twenty-year payment cap under ERISA Section 4219. Note, the calculation of the payment schedule reflects the 10% surcharge that was effective January 1, 2011.

Under Section 4001(b) of ERISA, this liability is owed by the company and all trades or businesses under common control. Under Section 4219(a) of ERISA, you are obligated to furnish, within thirty (30) days, a response to any written request for information from the Fund. In this regard, please furnish to the Fund within thirty (30) days a complete list of each trade or business under common control with the Company as that term is defined by Section 4001(b) of ERISA.

The company has the right within 90 days after receipt of this demand to: (1) ask the Trustees to review any specific matter relating to the determination of the liability and the schedule of payments (2) identify any inaccuracy in the determination of the liability, (3) furnish any additional, relative information to the Trustees.

PACE Industry Union–Management Pension Fund

3320 Perimeter Hill Drive • Nashville, Tennessee 37211-4123 • 1-800-474-8673 • 615-333-6343 • 615-333-5760 (Fax)
website: www.uswbenefitfunds.com

Case 3:16-cv-01469   Document 1-5   Filed 06/20/16   Page 3 of 23 PageID #: 85

The request for review may not, however, postpone the beginning date for payment of the liability installments. A copy of the actuary's worksheets in determining this liability is enclosed for your information along with definitions for some of the actuarial terms.

Your payment commencing on June 1, 2014 should be remitted as follows: If mailing: PACE Industry Union Management Pension Fund, P. O. Box 809197, Chicago, IL 60680-9197. If you prefer to send it in ACH or Wire the information is:

| | |
|---|---|
| Bank Name: | US Bank |
| Bank Contact: | Kent Weeks – 615.251-9321 or 800.377.3053 |
| Bank Address: | CN-TN-PL02 |
| | 150 Fourth Avenue North – Second Floor |
| | Nashville, TN 37219 |
| Name on account: | PIUMPF – Administrative Account |
| Account Number: | 151203001244 |
| Routing Number: | 064000059 ach |

Sincerely,

*Tonisha M. Franklin*

Tonisha M. Franklin

Enclosures

cc:  Allison Madan, Esq.
     Maria Wieck, CPA
     Trevor England, JD, CPA
     Lisa Ellis
     Peggy Byrd

# PACE Industry Union-Management Pension Fund

| | | | |
|---|---|---|---|
| Employer: | Domtar | Valuation Date: | December 31, 2011 |
| Employer number: | 745, 752 | Valuation Rate: | 7.5% |
| Withdrawal date: | December 30, 2012 | PBGC Rates: | 4.09% for first 20 years |
| | | | 4.30% thereafter |

## CALCULATION OF LIABILITY FOR COMPLETE WITHDRAWAL

| | | |
|---|---|---|
| 1. | Amount of vested benefits attributable to service with Domtar | $132,959,682 |
| 2. | Amount of vested benefits attributable to service with all employers obligated to contribute in 2011 | 1,891,940,421 |
| 3. | Amount of vested benefits not attributable to service with employers obligated to contribute in 2011 | 964,780,271 |
| 4. | Amount of all vested benefits under plan: item 2 + item 3 | 2,856,720,692 |
| 5. | Proportion of vested benefits attributable to service with employers obligated to contribute in 2011:  item 2/item 4 | 66.227700% |
| 6. | Total assets of plan at market value | 1,473,044,468 |
| 7. | Assets allocable to employers obligated to contribute in 2011: item 5  x  item 6 | 975,563,471 |
| 8. | Accumulated contributions by Company through 2011 | 164,773,439 |
| 9. | Accumulated benefit payments through 2011 attributable to service with Company | 65,580,368 |
| 10. | Item 8 - item 9 | 99,193,071 |
| 11. | Accumulated contributions through 2011 by all employers obligated to contribute in 2011 | 3,948,608,872 |

12. Accumulated benefit payments through 2011 attributable to service by all employers obligated to contribute in 2011     3,078,215,378

13. Item 11 - item 12     870,393,494

14. Company's proportionate share of assets allocable to all employers obligated to contribute in 2011: item 10/Item 13     11.396348%

15. Share of assets allocated to company: item 14 x item 7     111,178,608

16. Amount of unfunded vested benefits attributable to service with Company: item 1 - item 15     21,781,074

17. Assets not allocable to employers obligated to contribute in 2011: item 6 - item 7     497,480,997

18. Outstanding claims for liability reasonably expected to be collected with respect to employers that withdrew before 2011     51,920,522

19. Amount of unfunded vested benefits not attributable to service with employers obligated to contribute in 2011: item 3 - item 17 - item 18     415,378,752

20. Total contributions by Company through 2011     51,128,503

21. Total contributions through 2011 by all employers obligated to contribute in 2011     1,249,249,558

22. Company's proportionate share of unfunded vested benefits not attributable to service with employers obligated to contribute in 2011: item 20 / item 21     4.092737%

23. Company's share of unfunded vested benefits not attributable to service with employers obligated to contribute in 2011: item 22 x item 19     17,000,360

| | | |
|---|---|---:|
| 24. | Unamortized balance of value of reduced nonforfeitable benefits determined as of December 31, 2011 | 141,003,049 |
| 25. | Total contributions by Company for years 2007 through 2011 | 13,963,776 |
| 26. | Total contributions for years 2007 through 2011 by all employers obligated to contribute in 2011 | 253,422,064 |
| 27. | Company's proportionate share of unamortized balance of value of reduced nonforfeitable benefits as of December 31, 2011: item 25 / item 26 | 5.510087% |
| 28. | Company's share of unamortized balance of reduced nonforfeitable benefits determined as of 2011: item 27 x item 24 | 7,769,391 |
| 29. | Item 16 + item 23 + item 28 (not less than zero) | 46,550,825 |
| 30. | Amount of plan's unfunded vested benefits: item 4 - item 6 (not less than zero) | 1,383,676,224 |
| 31. | Item 29 - $100,000 but not more than $50,000 and not less than zero | 50,000 |
| 32. | Lesser of $50,000 and 3/4 of 1% of item 30 | 50,000 |
| 33. | DeMinimis amount: item 32 - item 31 (not less than zero) | 0 |
| 34. | Net allocable share of unfunded vested benefits: item 29 - item 33 (not less than zero) | 46,550,825 |
| 35. | Average annual number of hours for which Company was obligated to contribute for 3-year period 2002 - 2004 (Highest 3 consecutive within last 10) | 2,223,170.61 |
| 36. | Highest contribution rate at which Company was obligated to contribute through withdrawal date | $1.909300 |

37. Amount of annual payment :
    item 35 x item 36

    4,244,699.65

38. Monthly amount (adjusted for interest)

    355,860.13

39. Schedule of payments to amortize
    item 34:

    $355,860.13 per month for 240 months

* Payments have been limited to the 20-year payment cap per ERISA Section 4219

# PACE INDUSTRY UNION-MANAGEMENT PENSION FUND

### *Actuary's Assumptions and Methods for Withdrawal Liability Valuations*

The actuarial assumptions to be used are the valuation assumptions used for plan funding, except for the investment return rate, the expense charge and the retirement age. To the extent the assets, valued at market, cover the vested benefits, benefits will be valued at an investment return rate consistent with current annuity rates; the portion of the benefits that is not yet funded will be valued on the interest assumption used for plan funding.

Specifically, the withdrawal liability valuation assumptions and methods are:

1. *Investment Return*
   (a) To the extent benefits are matched by the market value of assets on hand: interest assumptions prescribed by the Pension Benefit Guaranty Corporation under 29 C.F.R. Part 2610 for terminating single-employer plans that do not close out under a Notice of Sufficiency, which are in effect for the applicable withdrawal liability valuation date.

   (b) The portion of the vested benefits that is not matched by the plan assets (at market) will be valued on the interest assumption used for plan funding, as of the applicable withdrawal liability valuation date.

   (c) The portion of the vested benefits that is matched by assets will be determined by comparing the total present value of benefits – at PBGC rates – with the total market value of assets; each vested benefit will be treated as covered by assets to the same extent as all other vested benefits.

2. *Mortality*

   Same as used for plan funding.

3. No separate expense charge; implicit expense factor included in interest assumptions prescribed by PBGC and in interest assumption used for plan funding.

4. *Retirement Age*

   Same as used for plan funding, unless Trustees determine that Fund will encounter different retirement experience in withdrawal cases.

## 5. *Assets*

Valued at fair market value as reported in the plan's audited financial statements, except that, where the market value of assets invested in insurance contracts is not readily available the contract assets will be valued at book as reported by the insurer. "Readily available" in this context means the market or cash-out value will be determined by the insurance company as of the end of the plan year and reported to the Fund no later than three months after the end of the plan year. If book value is used it will not be taken into account, under 1(c), in determining the extent to which vested plan liabilities are matched by plan assets, but will be subtracted from the total present value of the plan's vested liabilities to determine the unfunded vested liabilities.

Actuary/assumpt



Jackson Lewis P.C.
666 Third Avenue
New York, New York 10017
Tel 212 545-4000
Fax 212 972-3213
www.jacksonlewis.com

ALBANY, NY
ALBUQUERQUE, NM
ATLANTA, GA
AUSTIN, TX
BALTIMORE, MD
BIRMINGHAM, AL
BOSTON, MA
CHICAGO, IL
CINCINNATI, OH
CLEVELAND, OH
DALLAS, TX
DAYTON, OH
DENVER, CO
DETROIT, MI

GRAND RAPIDS, MI
GREENVILLE, SC
HARTFORD, CT
HOUSTON, TX
INDIANAPOLIS, IN
JACKSONVILLE, FL
LAS VEGAS, NV
LONG ISLAND, NY
LOS ANGELES, CA
MEMPHIS, TN
MIAMI, FL
MILWAUKEE, WI
MINNEAPOLIS, MN
MORRISTOWN, NJ

NAPA, CA
NEW ORLEANS, LA
NEW YORK, NY
NORFOLK, VA
OMAHA, NE
ORANGE COUNTY, CA
ORLANDO, FL
PHILADELPHIA, PA
PHOENIX, AZ
PITTSBURGH, PA
PORTLAND, OR
PORTSMOUTH, NH
PROVIDENCE, RI

RALEIGH-DURHAM, NC
RAPID CITY, SD
RICHMOND, VA
SACRAMENTO, CA
SAINT LOUIS, MO
SAN DIEGO, CA
SAN FRANCISCO, CA
SAN JUAN, PR
SEATTLE, WA
STAMFORD, CT
TAMPA, FL
WASHINGTON, DC REGION
WHITE PLAINS, NY

WRITER'S DIRECT DIAL (212) 545-4088
perryr@jacksonlewis.com

July 2, 2014

**VIA FEDERAL EXPRESS**
Trustees of the PACE Industry Union-Management
Pension Fund
3320 Perimeter Hill Drive
Nashville, Tennessee 37211-4123
ATTN: Tonisha M. Franklin

> Re:     **Domtar Inc. - Request for Review of
>             Assessment of Withdrawal Liability**

Dear Ms. Franklin:

Pursuant to Section 4219(b)(2)(A) of the Employee Retirement Income Security Act ("ERISA"), Domtar Inc. (the "Company") respectfully requests review by the Trustees of the PACE Industry Union-Management Pension Fund (the "Trustees" and the "Fund", respectively) of the demand for withdrawal liability, as set forth in your letter dated April 11, 2014 (the "Demand").

This request for review is submitted to the Trustees for the sole purpose of considering the Company's arguments regarding the Fund's determination that the Company has withdrawn from the Fund in a complete withdrawal and the calculation of withdrawal liability allegedly owed by the Company, and cannot be disclosed to any other person or used for any other purpose without the express consent of the Company.

The submission of this request for review does not constitute an acknowledgement by the Company that is has withdrawn from the Fund within the meaning of Section 4203(a) of ERISA or that it is obligated to make any payment of withdrawal liability to the Fund. The Company specifically reserves the right to supplement this request for review and to request additional information from the Fund.

In conducting a review of this matter, the Company specifically requests that the Trustees consider all factors relevant to their position, including, but not limited to, the following:



**A.      Determination of Withdrawal Liability**

*1.      Allocation of Unfunded Vested Benefit-The Direct Attribution Method*

The Fund allocates unfunded vested benefits to a withdrawing employer using the Direct Attribution Method described in *29 U.S.C. § 1391(c)(4)*. Under the Direct Attribution Method, the amount of unfunded vested benefits allocated to a withdrawing employer is equal to the sum of: (a) the unfunded liability attributable to service with the withdrawing employer and (b) a portion of the unfunded liability attributable to service with employers who have previously withdrawn from the plan. In addition, a withdrawing employer is allocated a share of "adjustable benefits" – benefits that were reduced as part of the rehabilitation plan adopted as a result of the plan being in critical status.

Based on our review of the Demand, it appears that the Fund allocates each participant's entire benefit to the last employer who employed the participant prior to the employee's date of withdrawal. It is our understanding that this modification of the Direct Attribution Method would require the approval of the Pension Benefit Guaranty Corporation (PBGC"). In this regard, the Company notes that the relevant PBGC regulation (codified at *29 CFR §4211.21*) provides that "[u]ntil the PBGC approves the allocation method or modification, a plan may not demand withdrawal liability under section 4219 of ERISA in an amount that exceeds the lesser of the amount calculated under the amendment or the amount calculated under the allocation method that the plan would be required to use if the PBGC did not approve the amendment."

Based on the foregoing, the Company requests that the Fund: (a) provide proof that the use of the aforementioned modification to the Direct Attribution Method has been properly approved by the Pension Benefit Guaranty Corporation; and (b) to the extent that the requisite approvals have not been received, to recalculate the amount of unfunded vested benefits properly allocable to the Company.

*2.      Calculation of Unfunded Vested Benefits.*

The Demand asserts that the Fund had an unamortized balance of unfunded vested benefits, or "UVB", of $1,383,676,224 as December 31, 2011.  Of this amount, the Demand further asserts that $46,550,825 of UVB was allocable to the Company.  UVB is defined as the excess of "the value of the nonforfeitable benefits under the plan" over the value of the assets of the plan. *ERISA Section 4213(c).*  The calculation of UVB is therefore based, in relevant part, upon the value of the Fund's "nonforfeitable benefits."  Nonforfeitable benefits, in turn, are defined as "a benefit for which a participant has satisfied the conditions for entitlement under the plan." *ERISA Section 4001(a)(8).*

Nonforfeitable benefits are not the same as vested benefits. *PBGC Opinion Letter 91-2* (explaining that "benefits become vested when a participant has completed the requisite number



of years of service under the plan" and that "a benefit, even though vested, does not become nonforfeitable until the participant has met all of the plan's requirements for that particular benefit"); *Roofers Local No. 30 Combined Pension Fund v. D.A. Nolt*, 719 F. Supp.2d 530 (E.D. Pa. 2010), *aff'd*, 444 Fed. Appx. 571 (3rd Cir. 2011)(upholding arbitrators determination excluding from UVB the value of early retirement benefits for participants who had not met all of the conditions for entitlement as of the last day of the plan year preceding the date of withdrawal.)

Based on the information provided, the Company's actuary is unable to ascertain whether and to what extent the calculation of UVB upon which the Demand is based includes forfeitable benefits, including without limitation early retirement benefits. To allow the Company's actuary to properly review the Fund's calculation of UVB and to determine what benefits were included therein, the Company requests any and all data and documentation used by the Fund's actuary to calculate UVB, including without limitation the following information:

(i)    Plan participant census;
(ii)   Actuarial workpapers reflecting the calculation of UVB;
(iii)  Computer program used to calculate UVB; and
(iv)   Detailed disclosure of each method, assumption, and estimate used by the Fund actuary to calculate UVB.

To the extent that the calculation of UVB includes benefits that are not "nonforfeitable benefits" within the meaning of Section 4213(c) of ERISA, the Company respectfully requests that the Fund adjust the amount of the UVB, and the allocation thereof to the Company, and issue a revised demand for withdrawal liability.

3.    *Amount of Withdrawal Liability-Impact of ERISA Section 4219(c)(1)(B)*

The Demand states that the amount of the Company's withdrawal liability is $46,550,825. The Demand appears to base the amount of withdrawal liability solely on the amount of UVB alleged to be allocated to the Company. However, in this regard the Demand disregards the plain language of the statute. Specifically, Section 4201(b)(1)(C) of ERISA defines an employer's withdrawal liability as "the allocable amount of unfunded vested benefits" adjusted "to reflect the limitation on annual payments under section 4219(c)(1)(B)." Section 4219(c)(1)(B), in turn, limits a withdrawing employer (absent circumstances not present here) to 20 annual payments of withdrawal liability.

Based on the foregoing clear and unambiguous statutory language, it is the Company's position that their "withdrawal liability" is the present value of the 20-year stream of payments. The Company therefore respectfully requests that the Fund recalculate the Company's withdrawal liability to properly reflect the limitations of section 4219(c)(1)(B) of ERISA.


4.  *Amount of Contributions*

The Demand sets forth a contribution history which improperly employs estimates and includes erroneous calculations. The Company respectfully requests that the Fund review its determination regarding the amount of contributions used in calculating the Company's allocable share of UVB. The Company reserves the right to identify any inaccuracies and to furnish additional information on this issue.

5.  *Allocable Share of Unfunded Vested Benefits*

The Demand asserts that the Company's allocable share of the Fund's UVB was $46,550,825. The Company respectfully requests that the Fund review its determination regarding the above. The Company reserves the right to identify any inaccuracies and to furnish additional information on this issue.

**B.   Payment of Withdrawal Liability**

1.  *Payment Schedule*

The amount of each annual payment of withdrawal liability is determined in accordance with Section 4219(c)(1)(C) of ERISA. The Demand asserts that (i) the Company's highest 3 year average base units (in this case, hours worked) was 2,223,170.61; (ii) the Company's highest contribution rate was $1.9093 per hour; (iii) the annual payment is $4,244,699.65; (iv) the monthly payment is $355,860.13; and (v) the Company's withdrawal liability is payable in 240 monthly payments of $355,860.13.

Thus, the Company respectfully requests that the Fund review its determinations regarding (i)-(v) above. The Company reserves the right to identify any inaccuracies and to furnish additional information on this issue.

2.  *Highest Contribution Rate*

As noted above, the Demand provides that the "Highest contribution rate at which Company was obligated to contribute through withdrawal date" was $1.9093 per hour. The Demand further provides that "the calculation of the payment schedule reflects the 10% surcharge that was effective January 1, 2011. For the reasons set forth herein, the inclusion of such amounts is incorrect.

In *Board of Trustees of the Local 863 IBT Pension Trust Fund v. C & S Wholesale Grocers, Inc.*, Civil Action No. 12-7821 (JLL)(JAD)(Dist. NJ March 19, 2014), the issue before the Court was the precise issue present here: "whether ERISA section 4219(c)(1)(C)(i)'s formula for calculating a withdrawing employer's annual withdrawal liability payment somehow accounts


for an automatic employer surcharge paid under ERISA section 305(e)(7)(A)." The Court held that they did not. It is the Company's position that the same result is mandated here.

The Court's analysis began by noting that "one of the variables in ERISA section 4219(c)(1)(C)(i)'s formula for calculating an employer's annual withdrawal liability payment is the employer's "highest contribution rate." *29 U.S.C. § 1399(c)(1)(C)(i)(II)*. The Court further noted that an employer's "highest contribution rate" is defined as that rate at which the employer had an obligation to contribute arising "under one or more [CBAs]" under the plan.' *See 29 U.S.C. §§ 1392(a), 1399(c)(1)(C)(i)(II)*. Therefore, in order for an employer's "highest contribution rate" to include an automatic employer surcharge imposed by ERISA section 305(e)(7), the Court found that the surcharge must likewise arise under the CBAs.

As the Court held, an automatic employer surcharge arises not under a CBA, but under ERISA section 305(e)(7) when the necessary conditions are met. Again, that section simply states that the value of an automatic employer surcharge, when applicable, is informed by the employer's CBAs; it does not magically amend the terms of those CBAs. *See 29 U.S.C. § 1085(e)(7)*. The plain language of ERISA section 305(e)(7)(A) clarifies this point:

> Each employer *otherwise obligated to make contributions* for the initial critical year shall be obligated to pay to the plan for such year a surcharge equal to 5 percent of the contributions *otherwise required under the applicable [CBA]* (or other agreement pursuant to which the employer contributes). For each succeeding plan year in which the plan is in critical status for a consecutive period of years beginning with the initial critical year, the surcharge shall be 10 percent of the *contributions otherwise so required. (emphasis in original).*

Based on the foregoing statutory language, the Court held that it was improper for the Fund to account for the imposition of the surcharge when it determined the withdrawing employer's "highest contribution rate" under ERISA section 4219(c)(1)(C)(i)(II). The same result is mandated here. The Company therefore requests that the Fund properly calculate the payment schedule, without the inclusion of the automatic surcharges, and issue a revised Demand accordingly.

### C. The Fund's Actuarial Factors Are Unreasonable

The Company further asserts the following:

1.    The withdrawal liability computations have not been prepared in conformity with generally accepted actuarial methods and assumptions, and are biased towards overstatement of



the alleged withdrawal liability. Assumptions were made as to the factual data where actual data should properly have been used, and certain inaccurate data appears to have been applied.

2.    Other actuarial factors artificially and unreasonably create withdrawal liability in this matter including, but not limited to, the Fund's assumptions relative to projected retirement dates, (which are unreasonably early), as well as the selection or failure to select, the mortality table, disability mortality table, employee termination rates and disability rates. Further, the Trustees should examine the methods selected for allocating UVB attributable to uncollected sums due to, among other things, employer insolvencies, or ERISA's *de minimis* rules.

**E.    Administrative Actions by the Trustees Unreasonably Increased or Created Withdrawal Liability.**

The Company further asserts the following:

1.    Benefit increases in prior plan years were excessive, in that such increases unreasonably increased unfunded vested benefits.

2.    The Fund's investment policies, or contribution policies unreasonably increased unfunded vested benefits.

3.    Please confirm that interest on the withdrawal liability assessed has been calculated in accordance with the Supreme Court's decision in *Milwaukee Brewery Workers Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414 (1995).

**F.    Validation of Data**

The Company requests that the Fund specifically review the techniques that have been used to validate the data underlying the calculation of withdrawal liability set forth in the Demand. The Company specifically requests that the Fund (i) set forth the techniques used to ensure accuracy and completeness; (ii) review and determine whether the data has been appropriately and sufficiently audited for inaccuracies and errors of omission. The Company reserves the right to identify and further contest any areas in which these validation techniques may have affected their accuracy. The Company further requests that the Fund explain the use of estimated wage data in the calculation of the annual payment amount.

\*        \*        \*

Please advise (i) whether the Trustees have adopted dispute resolution rules which differ from those set forth in Section 4219 and 4221, and (ii) the identity of the arbitral forum used by the Fund under Section 4221 of ERISA.

\*        \*        \*



The Company reserves the right to (1) challenge at any time the assessment of withdrawal liability based upon any relevant statutory, regulatory, or other legal ground before any appropriate forum, (2) request any additional information or materials which it may require in the course of this proceeding, (3) submit additional documentation to substantiate the arguments herein and to raise further arguments, not raised herein, based upon after-acquired information. The Fund may not construe any payment of an installment of demanded withdrawal liability as an admission of the occurrence of a withdrawal or of any liability with respect to any alleged withdrawal.

Kindly direct all future correspondence regarding this matter to the undersigned.

Very truly yours,

JACKSON LEWIS P.C.

ROBERT R. PERRY

cc:     Sebastian Routier
        Etienne Tougas
        Mitchell Hofing
        James B. Dexter, FSA

4829-1755-3692, v. 1



**UNITED STEELWORKERS**
**USW**
UNITY AND STRENGTH FOR WORKERS
**PIUMPF**

**Maria F. Wieck, CPA, CEBS**
Administrative Officer
**Trevor K. England, JD, CPA**
Financial Officer

October 9, 2014

Robert F. Perry
Jackson Lewis PC
666 Third Avenue
New York, NY 10017

<u>**VIA REGULAR & ELECTRONIC MAIL**</u>

**CERTIFIED MAIL:** <u>9171 9690 0935 0069 5592 70</u>
**RETURN RECEIPT REQUESTED**

    Re: Domtar, Inc. Er # 0745, 752

Dear Mr. Perry:

    This letter responds to the July 2, 2014, Request for Review by your client, Domtar Inc. Your request raises five issues with respect to the withdrawal liability calculation, two issues respecting the calculation of the installment payment schedule, and half-dozen other non-specific questions or challenges. Each is addressed in turn below.

    1.    The first issue you raise with respect to the withdrawal liability assessed to Domtar concerns the Fund's practice of allocating each participant's entire benefit to the last employer who employed the participant. Your position is that this rule is a modification of the direct attribution method that requires authorization from the PBGC. The Fund disagrees with that position.



Section 6(h)(1) of the Fund's Amended and Restated Declaration and Agreement of Trust states that, for purposes of calculating withdrawal liability, "Service with an Employer shall include all service (including Past Service Credit) credited to the Employees (including retirees and former Employees) for whom it was the last contributing Employer prior to the relevant date." In Section III of the Standard Form Agreements signed by Domtar (most recently on January 6 and 7, 2009), Domtar agreed "to become a party to the Agreement and Declaration of Trust establishing the said Fund, which is incorporated into this Agreement and made a part hereof, and agrees to be bound by all the terms and provisions of said Agreement. . . ." The Court of Appeals for the Seventh Circuit has held that these terms constitute a binding contractual agreement by the employer to be subject to the last employer rule contained in Section 6(h) of the Trust Agreement. *See Artistic Carton Co. v. Paper Industry Union-Management Pension Fund*, 971 F.2d 1346 (7th Cir. 1992). At least one other federal court has upheld a similar rule applied by a different multi-employer pension plan, holding that the "'last employer' assumption may be employed by a fund allocating withdrawal liability using the direct attribution method, either as a simplifying actuarial assumption that is reasonable under the particular circumstances and therefore permitted under 29 U.S.C. § 1393(a) or as a permissible plan rule under 29 U.S.C. § 1391(c)(4)(B) which an employer may agree to be bound by under general contracting principles." *ISB Liquidating Co. v. Dist. No. 15 Machinists' Pension Fund ex rel. Bd. of Trustees*, 127 F. Supp. 2d 192, 206 (E.D.N.Y. 2001). Accordingly, your request that the Fund recalculate Domtar's withdrawal liability without application of the "last employer" rule is denied.

Case 3:16-cv-01469 · Document 1-5 Filed 06/20/16 Page 18 of 23 PageID #: 180
3320 Perimeter Hill Drive · Nashville, Tennessee 37211-4867 · 615-383-0143 · Fax 615-385-1744 (L-10)
website: www.uswbenefitfunds.com

2.  Next, you question whether the Fund has impermissibly included forfeitable vested benefits, such as early retirement benefits, in the withdrawal liability calculations. The Fund has not done so; the Fund's withdrawal liability calculations only include nonforfeitable benefits. As stated in the Fund's annual actuarial valuation report, "[f]or purposes of determining the present value of vested benefits [for withdrawal liability], we exclude all benefits that are not protected by IRC Section 411(d)(6), including pre-retirement death benefits." *See* 2012 Actuarial Valuation Report, p. 2-25

In connection with this issue, you request a broad swath of information from the plan, specifically: plan participant census; actuarial workpapers reflecting the calculation of UVB; computer program used to calculate UVB; and detailed disclosure of each method, assumption and estimate used by the Fund actuary to calculate UVB. The Fund previously provided Domtar the methods, assumptions and estimates used by the Fund actuary to calculate the withdrawal liability, including the UVB, as attachments to the April 11, 2014 Demand letter. The Fund, and its actuaries, are under no obligation to turn over to participating employers the actuary's work papers or "computer programs," but will email you the 2012 Actuarial Valuation Report. You have already received documents explaining the methods and assumptions used by the Fund to calculate the UVB. The Fund will produce to you the plan participant census for Employees whose vested benefits were attributable to Domtar.

3.  The third issue you raise is "the Company's position that their 'withdrawal liability is the present value of the 20-year stream of payments" under ERISA Section 4219(c)(1)(B). If Domtar would like to pay their withdrawal liability in a lump sum, the present value of the 20-year stream of payments, as of October 1, 2014, is $44,942,584.62. ~~7 5 4 7 0~~

4.  The fourth issue you raise for review is a claim that the Fund "improperly employs estimates and includes erroneous calculations" in determining the UVB. The Fund did not use estimates in calculating Domtar's liability, and none of its calculations were in error.

5.  The fifth issue you raise is a request that the Fund review its determination of the Company's allocable share of the Fund's UVB, without identifying any particular issue for review. This portion of the Request fails to raise specific matters for review as required by ERISA Section 4219(b). The Fund will not review its calculation where no issue is raised for review.

6.  Next, your Request raises two issues relating to the calculation of the installment payments schedule. First, you make a general request that the Fund "review its determinations" with respect to the calculation of the installment payment, without identifying any errors in those calculations or the figures used in those calculations. The Fund has found no error in its calculations or in the figures used therein. Second, you challenge the inclusion of the 10% surcharge imposed pursuant to the Pension Protection Act in the calculation of the installment payment amount, citing to a district court opinion, *Bd. of Trustees of the IBT Local 863 Pension Fund v. C & S Wholesale Grocers Inc.*, Op. at 27 (D.N.J. Mar. 19, 2014). As you may know, that decision is currently on appeal before the Third Circuit Court of Appeals. In addition, at least one arbitrator (in addition to the arbitrator whose ruling is at issue in the *C & S Wholesale Grocers* case) has ruled that the surcharge is properly included. Moreover, Domtar's situation is distinguishable from that of the employer in the *C & S Wholesale Grocers* case, because Domtar signed a Standard Form Agreement agreeing to be bound by the Fund's Trust Agreement and the actions of its Trustees, and because the contribution rate increases here were imposed not merely due to the Pension Protection Act, but also in implementation of the Rehabilitation Act adopted by the Trustees.

Your Request then goes on to raise a grab-bag of issues, including an assertion that the liability computations were not prepared in conformity with generally accepted actuarial methods and assumptions; that the Fund should review its methods for allocating UVB attributable to

uncollectible sums; that unidentified benefit increases in unidentified prior years were excessive; and that unidentified investment or contribution policies unreasonably increased vested benefits. None of the subparagraphs in this part of the Request raise specific matters for review as required by ERISA Section 4219(b). The Plan has provided a broad range of information and materials in response to the Employer's Information Request, which enabled the Employer to identify specific matters for review, and the Employer has had ample opportunity to request additional information.

Your Request seeks confirmation that the interest on the withdrawal liability has been calculated in accordance with the Supreme Court's decision in *Milwaukee Brewery Workers*, which it has been.

You also request that the Fund set forth the techniques used to ensure accuracy and completeness of data, and review and determine whether the data has been sufficiently audited. The Fund has sufficiently audited the data for accuracy and completeness. Following is a general description of some of the steps taken by the Fund to ensure accuracy and completeness of the data used for withdrawal liability calculations. Prior to submitting data to the Fund's actuaries for calculations, the Fund runs a report of contributions and pensions paid for the company (individually and for each program or location in a control group) the Fund Office database. The Fund then runs a year-to-date history report from the database of the hours posted by month, by participant, by program. The total contributions are recalculated by taking hours for the company multiplied by the contribution rate to determine the amount that the employer should have contributed for the year to verify the contributions listed on the contributions and pension report are correct. The hours, contributions, payroll audits, interest received and surcharges are then verified on the contributions and pensions paid report by vouching such items to the remittance reports, interest billings and payroll audit reports. For any variances discovered, the Fund reviews the scanned images of the original remittance reports received from the employer each month to determine where the difference is. If there is a difference or error, the Fund makes any necessary corrections before submitting the data to the actuary for the withdrawal liability calculation. Further, as set forth in the Actuarial Valuation Report, the Fund's actuaries "review the data for reasonableness and consistency" and have found "no reason to doubt the substantial accuracy of the information on which" they base their calculations.

As a final note, the Request asserts that the Employer reserves the right to make further arguments not raised in the Request. The Plan reserves the right to object to any arguments that are raised after lapse of the time specified in ERISA Section 4219(b)(2).

Sincerely,

Trevor K. England, JD, CPA
Financial Officer

Cc:  Maria F. Wieck
     Lisa Ellis
     Tonisha M. Franklin

**Perry, Robert R. (NYC)**

| | |
|---|---|
| **From:** | Trevor England <TEngland@uswbenefitfunds.com> |
| **Sent:** | Wednesday, December 03, 2014 10:37 AM |
| **To:** | Perry, Robert R. (NYC) |
| **Cc:** | Trevor England |
| **Subject:** | RE: Domtar |

The deadline within which Domtar may commence arbitration to dispute the demand for withdrawal liability by the Trustees of the PACE Industry Union-Management Pension Fund has been extended until January 31, 2015.

**Trevor K. England, J.D., LL.M, C.P.A.**
Financial Officer
USW Benefit Funds
3320 Perimeter Hill Drive
Nashville, Tennessee 37211

Direct:    615-333-5783
Fax:        615-333-5797

*Visit us at uswbenefitfunds.com*

 **Like us on Facebook!**

Information provided is not meant to be a substitute for the full text of the Plan document. If there are differences between information provided and the Plan document, the Plan document will govern.

The information contained in this message is intended only for the personal and confidential use of the designated recipients named above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately at 1-800-474-8673.

**From:** Perry, Robert R. (NYC) [mailto:PerryR@jacksonlewis.com]
**Sent:** Tuesday, December 02, 2014 1:15 PM
**To:** Trevor England
**Cc:** FCIA FSA Sébastien Routhier (sebastien.routhier@domtar.com); 'Tougas, Etienne' (Etienne.Tougas@domtar.com); Jacobster, Michael (NYC)
**Subject:** Domtar
**Importance:** High

Dear Trevor:

Further to our conversation of a few moments ago, the purpose of this email is to request, on behalf of Domtar Corp., an extension of the deadline within which Domtar may commence arbitration to dispute the demand for withdrawal liability by the Trustees of the PACE Industry Union-Management Pension Fund until January 31, 2015.

As we discussed, the purpose of this extension request is to allow Domtar to consider and present an enhanced settlement offer to the Fund's Trustees.

As you know, the current arbitration deadline is December 31, 2014. In light of this pending deadline, I would appreciate a response to this extension request no later than Monday, December 8, 2014.

Thank you in advance for your prompt attention and consideration.

Regards,

Rob Perry

Robert R. Perry

Attorney at Law

Jackson Lewis P.C.

666 Third Avenue

New York, NY 10017

212.545.4088 | Direct

212.972.3213 | Fax


perryr@jacksonlewis.com


www.jacksonlewis.com

Representing management exclusively in workplace law and related litigation.

**IRS Circular 230 Disclosure:** We inform you that any U.S. federal tax advice contained in this communication (including any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed therein. (The foregoing disclaimer has been affixed pursuant to U.S. Treasury regulations governing tax practitioners.)

Confidentiality Note: This e-mail, and any attachment to it, contains privileged and confidential information intended only for the use of the individual(s) or entity named on the e-mail. If the reader of this e-mail is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have received this e-mail in error, please immediately return it to the sender and delete it from your system. Thank you.

Information provided is not meant to be a substitute for the full text of the Plan document. If there are differences between information provided and the Plan document, the Plan document will govern.

The information contained in this message is intended only for the personal and confidential use of the designated recipients named above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately at 1-800-474-8673.

**Perry, Robert R. (NYC)**

| | |
|---|---|
| **From:** | Trevor England <TEngland@uswbenefitfunds.com> |
| **Sent:** | Friday, December 12, 2014 2:23 PM |
| **To:** | Perry, Robert R. (NYC) |
| **Cc:** | Trevor England |
| **Subject:** | RE: Domtar |

As provided in the amendments to the Trust Agreement (available on the Fund's website), the Fund has adopted the PBGC rules and procedures governing dispute resolution. The Fund has not adopted any rule requiring the use of a specific arbitral forum.

**Trevor K. England, J.D., LL.M, C.P.A.**
Financial Officer
USW Benefit Funds
3320 Perimeter Hill Drive
Nashville, Tennessee 37211

Direct:   615-333-5783
Fax:       615-333-5797

*Visit us at uswbenefitfunds.com*

 **Like us on Facebook!**

Information provided is not meant to be a substitute for the full text of the Plan document. If there are differences between information provided and the Plan document, the Plan document will govern.

The information contained in this message is intended only for the personal and confidential use of the designated recipients named above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately at 1-800-474-8673.

**From:** Perry, Robert R. (NYC) [mailto:PerryR@jacksonlewis.com]
**Sent:** Friday, December 12, 2014 1:06 PM
**To:** Trevor England
**Subject:** RE: Domtar
**Importance:** High

Trevor:

Thank you for your prompt response.

My request for review had asked whether (1) the Fund's trustees had adopted dispute resolution rules which differ from those set forth in Sections 4219 and 4221 of ERISA and (2) the identity of the arbitral forum used by the Fund. I do not believe that you ever responded to this request.

Accordingly, I reiterate my request for the above information, as well as requesting all applicable Fund rules regarding the arbitration of withdrawal liability disputes.